Charles Melton McMILLIAN, a Minor, by and through his Mother and Next Friend, Mrs. Maude McMillian, Plaintiff in Error,

v.

Clyde BOLLENBACK, Defendant in Error.

No. 37039.

Supreme Court of Oklahoma.

Jan. 10, 1956.

Rehearing Denied March 6, 1956.

Cheek, Cheek & Cheek, Oklahoma City, for plaintiff in error.

Murphy & Firestone, Kingfisher, for defendant in error.

BLACKBIRD, Justice.

This is an action brought by Charles Melton McMillian, a minor, by and through his mother and next friend, Mrs. Maude McMillian, against Clyde Bollenback to recover personal injury damages alleged to have occurred while engaged in operating a combine while in the employ of defendant.

In his petition plaintiff alleged in substance that on the 2nd day of June, 1953, and for several days prior thereto he was employed by defendant doing general farm work and on that date he was directed to operate a combine, which is a grain harvesting machine consisting of intricate and multiple parts; that the combine belonged to a Mr. Miller, who was employed by defendant to harvest some oats; that defendant directed plaintiff to operate the combine for Mr. Miller; that plaintiff informed him he had never operated a combine and was without experience or knowledge of the operating of such machine. The defendant nevertheless required him to take over and operate the combine. In his petition plaintiff alleged several different acts of negligence on the part of defendant but the only ones relied on in the brief were that defendant failed and neglected to provide plaintiff with a reasonably safe place to work and reasonably safe machinery with which to work; that the machinery of the combine was defective which was known to defendant or should have been known by him; that defendant failed to give him proper instructions as to how to operate the machine, and to warn him of the danger in operating it.

In a separate paragraph of the petition plaintiff alleged the nature of the injury and damages sustained by him and prayed for judgment in the sum of $25,560.

In his answer defendant plead general and special denials of the allegations contained in plaintiff's petition and affirmatively plead that the injury sustained by plaintiff was due solely to his own negligence, and that defendant was in no manner negligent. He further plead that at the time plaintiff sustained his injury he was not in the employ of defendant but was in the employ of Mr. Miller who was hired by defendant to combine some oats on a per acre basis.

At the close of all the evidence defendant moved the court for a directed verdict on the ground that plaintiff had wholly failed to establish any of the allegations of negligence contained in his petition. The trial court denied the motion and the cause was submitted to a jury, who returned a verdict in favor of plaintiff.

Thereafter, on the 22nd day of March, 1955, on motion of defendant, the trial court set aside the verdict and granted defendant a new trial. In the journal entry of judgment granting the new trial, the court stated that the motion was granted on the sole ground that the evidence was insufficient to establish primary negligence against defendant.

Plaintiff appeals and assigns this ruling as error. A review of plaintiff's testimony shows that he testified to the following facts. He started to work for defendant about three days prior to the time he sustained his injury. His work consisted of assisting defendant in the baling of hay; that on that day I. W. Miller, the man defendant had hired to combine his oats, came to defendant's premises and informed him that the person he had hired to operate the combine failed to appear, and inquired of defendant whether he or his son could operate the combine for him that day. Defendant told him that neither could do so for the reason they were otherwise occupied. Defendant however then stated that Charley, meaning plaintiff, was available and could operate the combine for him. Plaintiff told defendant he had never operated a combine, knew nothing about such a machine but that nevertheless defendant directed him to operate the machine and stated that Mr. Miller would show him how to operate it.

Plaintiff then reported to Mr. Miller and they proceeded to harvest the oats. Mr. Miller showed him how to operate the

combine. The oats had theretofore been cut and were raked in rows on the ground.

Plaintiff further testified that the combine is pulled by a tractor and that the power to operate the machinery in the combine comes from the motor of the tractor and that all the machinery in the combine is covered by a shield or safety guard.

There is an inscription on the machine "be careful" about eighteen inches above the guard which can be plainly seen and read as shown by the photographs of the combine offered in evidence.

The combine has attached to it a scoop which scoops up the oats from the ground and carries them into the combine where they are threshed. From there they are conveyed by use of a power driven mechanism, referred to as an augur, through a long spout attached to the combine and are dumped into a truck furnished by the owner of the grain being harvested. The evidence shows that to unload the grain bin it is necessary to stop the tractor from moving, leaving the motor running, then pull a rod that throws the combine out of gear with the exception of the unloading augur and the drive shaft from the tractor, then lower the spout into the truck and turn a little crank and tighten the friction clutch to make the augur run. The evidence shows that the oats were somewhat damp in places that morning and that damp grain will occasionally clog the augur which will not operate until the damp grain is in some manner removed.

Plaintiff testified that when he started to operate the combine Mr. Miller rode with him on the tractor for a short distance to show him how to operate the combine and told him that when the bin became filled, to call him, and he would show him how to unload the bin and dump the grain into the truck, which he did. Plaintiff testified that he kept practicing unloading the bin until he could do it perfectly, which he stated was done as above stated. He further testified that Mr. Miller showed him on several occasions how to unload the bin. The second time he showed him, the augur became clogged and he saw Mr. Miller unclog it, but he did not know how it was done. He was sitting on the seat of the tractor at the time and Mr. Miller did not call him to show him how to unclog the augur. After Mr. Miller unclogged the augur and dumped the grain, he then left and plaintiff started the combine and operated it until the bin was again filled. He then started to unload and found the augur had again become clogged. He climbed on the platform of the combine and looked down behind the safety guard seeing a chain that is instrumental in starting the augur, and concluded the chain was stuck. He then, without cutting off the power, put his hand underneath the shield or safety guard and caught hold of the chain and jerked it and the augur started. In attempting to remove his hand, it was caught in a belt which drives the loading augur and was pulled against the pulley and pinned between the pulley and the safety guard.

Fred Conwell, who was employed by defendant to haul the grain from the combine testified he saw plaintiff standing on the platform looking down under the safety guard. He shouted to him but could not make himself heard. He then ran toward plaintiff, but when he reached him found that his hand was caught in the machinery. He immediately stopped the tractor engine and cut the belt in order to free plaintiff's hand but ascertained that his hand was drawn up against the pulley and pinned between the pulley and the safety guard. He then called Mr. Miller who obtained a wrench, removed the safety guard, released plaintiff's hand and sent him to a hospital.

The evidence is undisputed that the combine was in good working order. There was no defect in any of the machinery and no defect in the mechanics of the augur nor was there any defect in either the chain or the belt. All of the machinery of the combine was covered by the safety guards. There is no way shown in which plaintiff could have been injured by any of the machinery about the combine except by some deliberate act of his own.

Plaintiff testified that he was nearly eighteen years of age at the time he sustained his injury; that he had worked on farms and with machinery ever since he

was fifteen years of age; that he operated trucks, tractors and hay balers and knew that working around machinery was dangerous.

There is no evidence whatever to sustain plaintiff's allegations that the defendant was guilty of negligence in failing to furnish him a reasonably safe place in which to work or that defendant furnished him defective machinery with which to work. He contends however that defendant was guilty of negligence in not instructing him how to unclog the augur when it became clogged, and warn him of the danger in so doing. We do not agree. We think plaintiff shows by his own testimony that he knew it was dangerous to place his hand beneath the safety guard in attempting to start the augur. Moreover the danger was patent and obvious and it was therefore not necessary for defendant to warn him of the danger. We have heretofore held that the master's liability in respect to warning his servant depends upon his knowledge, actual or constructive, of the danger to which his servant is exposed, and such master is guilty of negligence if he knew or ought, in the exercise of ordinary care and diligence, to have known that a warning was necessary. Mid-Continent Petroleum Corp. v. Jamison, 197 Okl. 387, 171 P.2d 976. We have also held that a master is not bound to warn his servant against dangers which are obvious or patent, or of which the servant has knowledge. Phillips v. Tackett, 168 Okl. 143, 32 P.2d 29; Janow v. Lewis, 197 Okl. 415, 172 P.2d 315.

Plaintiff in disregard of the safety guard placed on the combine and the aforesaid warning and in disregard of his own knowledge that working around machinery is dangerous, deliberately placed his hand under the safety guard where it was caught in the machinery and injured. The defendant is not responsible for that injury.

There is no evidence whatever showing primary negligence on the part of defendant and the trial court ruled correctly in so holding, and in granting defendant a new trial. This conclusion renders it unnecessary to pass upon the other questions raised and discussed by defendant.

Judgment affirmed.

JOHNSON, C. J., and CORN, HALLEY and JACKSON, JJ., concur.

WILLIAMS, V. C. J., and WELCH and DAVISON, JJ., dissent.